**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| JANIS BROWNE, AS PERSONAL REPRESENTATIVE FOR SHENIKA GORE, <br><br> AND <br><br> JEANEISHA MCFARLANE <br><br><div align=center>Plaintiffs,</div> <br> v. <br><br> GENERAL MOTORS, LLC; ATLANTIC RESEARCH CORPORATION; ARC AUTOMOTIVE, INC.; AUTOLIV, INC.; KM&I CO. LTD.; FAURECIA; FAURECIA NORTH AMERICA, and FAURECIA NAO, INC. <br><br><div align=center>Defendants.</div> | Case No.: <br><br><br><br><br><br><br> **ACTION FOR DAMAGES** <br><br><br><br> <u>JURY TRIAL DEMANDED</u> |

## <u>COMPLAINT</u>

**COMES NOW** the Plaintiff Janis Browne, as Personal Representative for Shenika Gore and Jeanisha McFarlane, individually brings this action against Defendant General Motors, LLC, Atlantic Research Corporation, ARC Automotive, Inc., Autoliv, Inc., KM&I Co. LTD., Faurecia, Faucecia North America, and Faurecia NAO, Inc.:

### <u>PARTIES</u>

1.     Plaintiff Janis Browne is an individual over the age of nineteen and is a resident and citizen of Fredericksted, St. Croix, U.S. Virgin Islands.

2.     Decedent Shenika Gore was an individual over the age of nineteen and was a resident and citizen of Fredericksted, St. Croix, U.S. Virgin Islands.  Shenika Gore passed away as a result of the subject motor vehicle incident which occurred on January 1, 2015.

3. Plaintiff, Jeaneisha McFarlane, is an adult resident of St. Croix, VI, residing at 109 Mount Pleasant, Christiansted, V.I.

4. On March 21, 2016, Plaintiff Janis Browne was appointed by the Superior Court of the Virgin Islands as the personal representative of the Estate of Shenika Ladonna Gore.

5. Defendant General Motors, LLC ("GM") is a Delaware Corporation, with its principal place of business in Michigan, and does business throughout the United States, including the U.S. Virgin Islands, for profit. At the time of the occurrence made the basis of this action and for some time prior thereto, Defendant GM was qualified to do business and solicited for sale and sold its motor vehicles, including the 2009 Chevrolet Aveo VIN# KL1TD56E19B668691 (the "subject vehicle") involved in the incident made the basis of this Complaint, in this state and judicial district. Defendant GM has an agent for service of process upon which service can be had, to wit: CSC of Cobb County, Inc., 192 Anderson Street S.E., Suite 1 25, Marietta, Georgia, 30060.

6. GM was created in the wake of the bankruptcy filings of its predecessor corporation General Motors Corp. and voluntarily assumed all liabilities in connection with all vehichles manufactured by General Motors Corp.

7. Pursuant to In re Motors Liquidation Co., 447 B.R. 142, 144, 2011 Bankr. LEXIS 11 (Bankr. S.D.N.Y. 2011), the proper named defendant on behalf of the manufacturer of the subject vehicle is General Motors, LLC.

8. Pursuant to In re Motors Liquidation Co., 447 B.R. 142, 144, 2011 Bankr. LEXIS 11 (Bankr. S.D.N.Y. 2011), the proper named defendant on behalf of the manufacturer of the subject vehicle is General Motors, LLC.

9.     Defendant, Atlantic Research Corporation, is a corporation of other business entity headquartered at 5945 Wellington Road, Gainesville, VA 20155.

10.     Defendant, ARC Automotive, Inc. is a corporation or other business entity headquartered at 1729 Midpark Road, Suite D. Knoxville, TN, 37921.

11.     Defendants Atlantic Research Corporation and ARC Automotive, Inc. are collectively referred to as "ARC" throughout this Complaint.

12.     Defendants, ARC, supplied the airbag inflators, airbags, or other airbag component parts for the subject 2009 Chevrolet Aveo.

13.     Defendants, Autoliv, Inc. is a corporation or other business entity incorporated in the State of Delaware and headquartered at 1320 Pacific Drive, Auburn Hills, Michigan, 48326.

14.     Defendant Autoliv is the supplied of the sensing diagnostic module (SDM), airbags, or other airbag component parts for the subject 2009 Chevrolet Aveo.

15.     Defendant, KM&I co. Ltd. ("KMI") is a foreign corporation with its principal place of business in South Korea, located at 614 Baekbeom-ro, Seo-gu, Incheon 404-817, South Korea.  Defendant KMI does business throughout the United States, including the U.S. Virgin Islands, for profit.  At the time of the occurrence made the basis of this action and for sometime prior thereto, KMI was in the business of designing, manufacturing, testing, marketing, distributing and/or selling automotive parts and specifically car seats, seatbacks and/or seat and seatback components in the 2009 Chevy Aveo involved in the incident made the basis of this Complaint, in this state and judicial district.  KMI can be served with process through the Hague Convention Treaty, to wit: KMI, 614 Baekbeom-ro, Seo-gu, Incheon 404-817, South Korea.

16.     Defendant, Faurecia is a foreign corporation with its principal place of business in Nanterre, France.  Defendant Faurecia does business throughout the United States, including the

U.S. Virgin Islands, for profit.  At the time of the occurrence made the basis of this action and for sometime prior thereto, Faurecia was in the business of designing, manufacturing, testing, marketing, distributing and/or selling automotive parts and specifically car seats, seatbacks and/or seat and seatback components in the 2009 Chevy Aveo involved in the incident made the basis of this Complaint, in this state and judicial district.  Faurecia can be served with process through the Hague Convention Treaty, to wit: Faurecia, 2 Rue Hennape, 92000 Nanterre, France.

17.     Defendant Faurecia North America (hereinafter "Faurecia NA") is a Michigan corporation with a principal place of business located in Michigan, and does business throughout the United States, including the U.S. Virgin Islands, for profit. At the time of the occurrence made the basis of this action and for some time prior thereto, Faurecia North America was in the business of designing, manufacturing, testing, marketing, distributing and/or selling automotive parts and specifically car seats, seatbacks and/or seat and seatback components of the 2009 Chevy Aveo involved in the incident made the basis of this Complaint, in this state and judicial district.  Defendant Faurecia North America has an agent for service of process upon which service can be had, to wit: 2500 Executive Hills Dr., Auburn Hills, MI 48326.

18.     Defendant Faurecia NAO, Inc. (hereinafter "Faurecia NAO") is a Delaware corporation with a principal place of business located in Michigan, and does business throughout the United States, including the U.S. Virgin Islands, for profit. At the time of the occurrence made the basis of this action and for some time prior thereto, Faurecia NAO was in the business of designing, manufacturing, testing, marketing, distributing and/or selling automotive parts and specifically car seats, seatbacks and/or seat and seatback components of the 2009 Chevy Aveo involved in the incident made the basis of this Complaint, in this state and judicial district. Defendant Faurecia NAO has an agent for service of process upon which service can be had, to

wit: The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

## JURISDICTION AND VENUE

19.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 exclusive of interest and costs, and this is an action by an individual Plaintiff against Defendants who are citizens of different states.

20.     Venue in this judicial district is proper because the accident took place in St. Croix, U.S. Virgin Islands.

21.     All defendants conducted significant and substantial business in the United States Virgin Islands and specifically within the territory of St. Croix.

## FACTUAL ALLEGATIONS

22.     At the time of the accident decedent Shenika Gore was a front seat passenger in the 2009 Chevy Aveo operated by Thalia Figueroa southbound on Northside Road in Frederiksted, St. Croix.

23.     At the time of the accident, Plaintiff, Jeaneisha McFarlane was in the rear seat sitting on the driver's side.

24.     Upon information and belief, the 2009 Aveo, operated by Thalia Figueroa crossed the center line and struck a 2014 Jeep Grand Cherokee owned and operated by Hillaren Frederick, which was traveling northbound on Northside Road in Frederiksted, St. Croix.

25.     Following the initial impact, the subject Aveo ended up displaced 26 feet from the point of impact to the western side of the northbound lane facing eastward.  While the Jeep was displaced 11.9 feet from the point of impact to the eastern edge of the southbound lane facing southeast.

26.     During this crash sequence the driver's front airbag in the Aveo deployed, however the passenger airbag did not.

27.     All deployment thresholds were met, however due to the defective design and manufacturer of the airbag system, the passenger airbag failed to deploy.

28.     Immediately following the incident, EMT technicians and members of the Rescue Squad as well as the Rescue Extraction Team conducted the extraction of two passengers from the subject vehicle including the decedent Shenika Gore.

29.     Shortly after the Shenika Gore was extracted from the subject vehicle, she was transported to Juan F. Luis Hospital and pronounced dead as she had suffered massive chest and head injuries.

30.     Had the passenger airbag deployed, this accident was survivable to Shenika and she would have survived with minor and completely recoverable injuries.

31.     Additionally, no side airbags on the passenger side of the vehicle deployed to protect Shenika.

32.     As a direct and proximate result of the wrongful conduct of the Defendants, Plaintiff Janis Browne has suffered immensely in the aftermath of Shenika's death.  For Plaintiff Janis Browne, the grief of losing a child is never-ending and permeates their everyday life in innumerable ways.

33.     Plaintiff Janis Browne and all other beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling and loss of guidance.

34.     As a direct and proximate result of the wrongful conduct of the Defendants, decedent, Shenika Gore suffered the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses from the moment the accident sequence began until her death approximately two hours later.

35.     As a direct and proximate result of the wrongful conduct of the Defendants, decedent, Shenika Gore suffered a complete and total loss of earning capacity for the remainder of her life, which serves to the detriment of her beneficiaries.

36.     Plaintiff, Jeaneisha McFarlane suffered three spinal fractures, a shattered right hip and pelvis, a broken manible, numbness/tingling radiating from bank into legs, sexual dysfunction, stitches, scarring, bowel and bladder incontinence, neurological injuries, numerous surgeries, orthopedic injuries, mental and emotional pain and suffering; chronic physical pain, suffering and loss of life's pleasures, past, present and future; loss of earnings and wages and loss of earnings capacity, past, present and future; hospital, medical and rehabilitation expenses past, present and future, including medical equipment, supplies and other medical care and treatment; other psychological, psychiatric, and neurological injuries, the full extent of which is yet to be determined and some or all of which may be permanent in nature.

(a)     As a direct and proximate result of the conduct of defendants, plaintiff Jeaneisha McFarlane, has in the past required, continues to require, and may in the future require, medical treatment and care, and has in the past, continues presently, and may in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempt to alleviate and/or cure her condition.

(b)     As a direct and proximate result the conduct of defendants, plaintiff, Jeaneisha

McFarlane, has in the past, and continues to suffer pain, disfigurement, scarring, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, and other intangible losses.

(c)     As a direct and proximate result of the conduct of the defendants, plaintiff, Jeaneisha McFarlane, has been prevented and will be prevented in the future from performing her usual duties, activities, occupations and avocations and has suffered a loss of earnings and a loss of earning capacity.

37.     Defendants are jointly and severally responsible and liable for the damages and injuries sustained by Plaintiffs.

## COUNT I – STRICT LIABILITY
## PLAINTIFFS v. GM

38.     Plaintiff repeats, realleges and incorporates by reference herein each and every allegation contained in the preceding paragraphs with the same force and effect as if hereinafter set forth at length.

39.     Defendant, GM, is in the business of designing, assembling, manufacturing, distributing, selling and/or supplying cars, such as the 2009 Chevrolet Aveo involved in the subject collision.

40.     Defendant, GM, marketed and/or placed the subject Chevrolet Aveo owned and operated into the general stream of commerce.

41.     The subject Chevrolet Aveo was expected to and did reach end users, including driver Thalia Figueroa, without substantial change in the condition in which it was designed, assembled, manufactured, distributed, sold and/or supplied by Defendant GM.

42.     The subject Chevrolet Aveo was distributed, sold and/or supplied by Defendant GM in a defective condition for the reasons set forth below.

43.     Defendant GM, by and through its agents, servants, workmen, contractors and/or employees acting within the course and scope of their employment, breached its duties under § 402A of the Restatement (Second), Restatement (Third) of Torts and the statutes and case law of The Virgin Islands by:

   a.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle that was not crashworthy;

   b.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

   c.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

   d.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

   e.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

   f.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

   g.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

   h.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate restraint and/or safety belt protection systems;

   i.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous airbag protection systems;

   j.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous seatback systems;

k.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle without properly functioning airbags;

l.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle in which the passenger airbag would fail to deploy in the circumstances of the subject crash;

m.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle in which the driver's seat would fail in the circumstances of the subject crash and injure the rear seat passenger;

n.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle with inadequate warnings and warning systems;

o.  failing to properly and reasonably design, manufacture, assemble, test and sell the care with the airbags necessary to provide protection for occupants in the car; and

p.  designing, manufacturing, selling, supplying and distributing a vehicle that, when used properly, would cause serious injury to the user.

44.  The subject Chevrolet was used and employed for the purpose for which it was designed and manufactured, and was used in a foreseeable manner.

45.  Defendant GM is strictly liable to plaintiffs for the injuries, damages and death outlined above.

46.  By reason of Defendant GM's failure to conform to its obligations and duties under § 402A of the Restatement (Second) and Restatement (Third) of Torts and Virgin Islands statutes and case law plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

47.  Defendant, GM, is jointly and severally liable for all damages in this case.

**COUNT II – NEGLIGENCE**
**PLAINTIFFS v. GM**

48.    Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

49.    Defendants owed the users and passengers of the subject vehicle a duty to use reasonable care in designing, manufacturing, distributing and selling such vehicles to the public.

50.    It was foreseeable to the defendants that if they designed, manufactured and distributed, defective and unreasonably dangerous vehicles with inadequate impact and occupant restraint systems, drivers and occupants of such vehicles would be subjected to significant risk of severe personal injury or death.

51.    The injuries, damages, and death sustained by Plaintiffs, were directly and proximately caused by the negligence of Defendant GM in the following particular respects:

a. failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject Chevrolet so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

b. failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

c. failing to adequately inform and warn purchasers and ultimate users of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

d. designing, assembling, manufacturing, selling, supplying and distributing a vehicle that was not crashworthy;

e. designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

f. designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

g. designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

h. designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

i. designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

j. designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

k. designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate restraint and/or safety belt protection systems;

l. designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous airbag protection systems;

m. designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous seatback systems;

n. designing, assembling, manufacturing, selling, supplying and distributing a vehicle without properly functioning airbags;

o. designing, assembling, manufacturing, selling, supplying and distributing a vehicle in which the passenger airbag would fail to deploy in the circumstances of the subject crash;

p. designing, assembling, manufacturing, selling, supplying and distributing a vehicle in which the driver's seat would fail in the circumstances of the subject crash and injure the rear seat passenger;

q. designing, assembling, manufacturing, selling, supplying and distributing a vehicle with inadequate warnings and warning systems;

r. failing to properly and reasonably design, manufacture, assemble, test and sell the care with the airbags necessary to provide protection for occupants in the car; and

s. designing, manufacturing, selling, supplying and distributing a vehicle that, when used properly, would cause serious injury to the user.

t.   violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

u.   violating principles of sound engineering with due regard for the fact that persons would be traveling in their cars at highway speeds;

v.   failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

w.   failing to recall and/or retrofit the car with proper safety features.

52.   As a result of Defendant GM's negligence, plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

53.   Defendant, GM, is jointly and severally liable for all damages in this case.

## COUNT III – STRICT LIABILITY
## <u>PLAINTIFFS v. ARC</u>

54.   Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length herein

55.   Defendant, ARC, is in the business of designing, assembling, manufacturing, distributing, selling and/or supplying airbags, airbag inflators and occupant protection systems, such as the airbag system and/or airbag inflator within the 2009 Chevrolet Aveo involved in the subject collision.

56.   Defendant, ARC, marketed and/or placed the subject airbag system of the Chevrolet Aveo, which was owned and operated in the general stream of commerce.

57.   The subject airbag, airbag inflator, and occupant protection system in the Chevrolet Aveo was expected to and did reach end users, including driver Thalia Figueroa, without substantial change in the condition in which it was designed, assembled, manufactured, distributed, sold and/or supplied by Defendant ARC.

58.     The subject airbag system was distributed, sold and/or supplied by Defendant ARC in a defective condition for the reasons set forth below.

59.     Defendant ARC, by and through its agents, servants, workmen, contractors and/or employees acting within the course and scope of their employment, breached its duties under § 402A of the Restatement (Second), Restatement (Third) of Torts and the statutes and case law of The Virgin Islands by:

a.  failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject airbag system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

b.  failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

c.  failing to adequately inform and warn purchasers and ultimate users of the airbag system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

d.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle airbag/airbag inflator system that was not crashworthy;

e.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

f.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

g.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

h.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

i.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

k.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous airbag protection systems;

l.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that did not properly function;

m.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that lacked proper and reliable passenger presence sensing systems;

n.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that lacked proper and reliable impact sensing systems;

o.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that had defective and unreliable deployment thresholds;

p.  designing, assembling, manufacturing, selling, supplying and distributing an airbag system that failed to deploy in the circumstances of the subject crash;

q.  designing, assembling, manufacturing, selling, supplying and distributing an airbag system with inadequate warnings and warning systems;

r.  failing to properly and reasonably design, manufacture, assemble, test and sell the care with the airbags necessary to provide protection for occupants in the car; and

s.  designing, manufacturing, selling, supplying and distributing an airbag system in a vehicle that, when used properly, would cause serious injury to the user.

t.  violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

u.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

v.  failing to recall and/or retrofit the car with proper safety features.

60.     The subject airbag system was used and employed for the purpose for which it was designed and manufactured, and was used in a foreseeable manner.

61.     Defendant ARC is strictly liable to plaintiffs for the injuries, damages and death outlined above.

62.     By reason of Defendant ARC's failure to conform to its obligations and duties under § 402A of the Restatement (Second) and Restatement (Third) of Torts and Virgin Islands statutes and case law plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

63.     Defendant, ARC, is jointly and severally liable for all damages in this case.

## COUNT IV – NEGLIGENCE
## <u>PLAINTIFFS v. ARC</u>

64.     Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

65.     Defendant ARC was negligent in the following respects in the design, manufacture, testing and distribution regarding the subject vehicle:

a.  failing to design, test, manufacture, assemble and correctly install the passenger airbag sensors and restraints control module so as to allow for the deployment of the airbag in an obvious deploy event.

b.  failing to ensure the subject vehicle was reasonably crashworthy;

c.  failing to adequately test the subject vehicle's passenger's airbag;

d.  failing to provide reasonable and adequate warnings of the subject vehicle about its unreasonably dangerous and defective condition regarding its passenger's airbag;

e.  failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject airbag system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

f.  failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

g.  failing to adequately inform and warn purchasers and ultimate users of the airbag system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

h.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle airbag system that was not crashworthy;

i.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

k.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

m. designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

n.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

o.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous airbag protection systems;

p.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that did not properly function;

q.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that lacked proper and reliable passenger presence sensing systems;

r.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that lacked proper and reliable impact sensing systems;

s.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that had defective and unreliable deployment thresholds;

t.  designing, assembling, manufacturing, selling, supplying and distributing an airbag system that failed to deploy in the circumstances of the subject crash;

u.  designing, assembling, manufacturing, selling, supplying and distributing an airbag system with inadequate warnings and warning systems;

v.  failing to properly and reasonably design, manufacture, assemble, test and sell the care with the airbags necessary to provide protection for occupants in the car; and

w.  designing, manufacturing, selling, supplying and distributing an airbag system in a vehicle that, when used properly, would cause serious injury to the user.

x.  violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

y.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

z.  failing to recall and/or retrofit the car with proper safety features.

66.  As a result of Defendant ARC's negligence, plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

67.  Defendant, ARC, is jointly and severally liable for all damages in this case.

## COUNT V – STRICT LIABILITY
## PLAINTIFFS v. AUTOLIV

68.  Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length herein

69.  Defendant, Autoliv, is in the business of designing, assembling, manufacturing, distributing, selling and/or supplying airbags, SDMs, and occupant protection systems, such as the airbag system within the 2009 Chevrolet Aveo involved in the subject collision.

70.     Defendant, Autoliv, marketed and/or placed the subject airbag system and/or SDM of the Chevrolet Aveo, which was owned and operated in the general stream of commerce.

71.     The subject airbag, SDM, and/or occupant protection system in the Chevrolet Aveo was expected to and did reach end users, including driver Thalia Figueroa, without substantial change in the condition in which it was designed, assembled, manufactured, distributed, sold and/or supplied by Defendant Autoliv.

72.     The subject airbag system, SDM, and/or occupant protection system was distributed, sold and/or supplied by Defendant Autoliv in a defective condition for the reasons set forth below.

73.     Defendant Autoliv, by and through its agents, servants, workmen, contractors and/or employees acting within the course and scope of their employment, breached its duties under § 402A of the Restatement (Second), Restatement (Third) of Torts and the statutes and case law of The Virgin Islands by:

     a.  failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject airbag system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

     b.  failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

     c.  failing to adequately inform and warn purchasers and ultimate users of the airbag system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

     d.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle airbag system and/or SDM that was not crashworthy;

     e.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

     f.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

g.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

h.

i.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

k.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous airbag protection systems;

m.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that did not properly function;

n.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that lacked proper and reliable passenger presence sensing systems;

o.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that lacked proper and reliable impact sensing systems;

p.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that had defective and unreliable deployment thresholds;

q.  designing, assembling, manufacturing, selling, supplying and distributing an airbag system that failed to deploy in the circumstances of the subject crash;

r.  designing, assembling, manufacturing, selling, supplying and distributing an airbag system with inadequate warnings and warning systems;

s.  failing to properly and reasonably design, manufacture, assemble, test and sell the care with the airbags necessary to provide protection for occupants in the car; and

t.  designing, manufacturing, selling, supplying and distributing an airbag system in a vehicle that, when used properly, would cause serious injury to the user.

u.  violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

v.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

w.  failing to recall and/or retrofit the car with proper safety features.

74.    The subject airbag system was used and employed for the purpose for which it was designed and manufactured, and was used in a foreseeable manner.

75.    Defendant Autoliv is strictly liable to plaintiffs for the injuries, damages and death outlined above.

76.    By reason of Defendant Autoliv's failure to conform to its obligations and duties under § 402A of the Restatement (Second) and Restatement (Third) of Torts and Virgin Islands statutes and case law plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

77.    Defendant, Autoliv, is jointly and severally liable for all damages in this case.

## COUNT VI – NEGLIGENCE
## PLAINTIFFS v. AUTOLIV

78.    Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

79.    Defendant Autoliv was negligent in the following respects in the design, manufacture, testing and distribution regarding the subject vehicle:

a.  failing to design, test, manufacture, assemble and correctly install the passenger airbag sensors and restraints control module so as to allow for the deployment of the airbag in an obvious deploy event.

b.  failing to ensure the subject vehicle was reasonably crashworthy;

c.  failing to adequately test the subject vehicle's passenger's airbag;

d.  failing to provide reasonable and adequate warnings of the subject vehicle about its unreasonably dangerous and defective condition regarding its passenger's airbag;

e.  failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject airbag system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

f.  failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

g.  failing to adequately inform and warn purchasers and ultimate users of the airbag system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

h.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle airbag system that was not crashworthy;

i.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

k.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

m. designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

n.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

o.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous airbag protection systems;

p.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that did not properly function;

q.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that lacked proper and reliable passenger presence sensing systems;

r.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that lacked proper and reliable impact sensing systems;

s.  designing, assembling, manufacturing, selling, supplying and distributing a an airbag system that had defective and unreliable deployment thresholds;

t.  designing, assembling, manufacturing, selling, supplying and distributing an airbag system that failed to deploy in the circumstances of the subject crash;

u.  designing, assembling, manufacturing, selling, supplying and distributing an airbag system with inadequate warnings and warning systems;

v.  failing to properly and reasonably design, manufacture, assemble, test and sell the care with the airbags necessary to provide protection for occupants in the car; and

w.  designing, manufacturing, selling, supplying and distributing an airbag system in a vehicle that, when used properly, would cause serious injury to the user.

x.  violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

y.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

z.  failing to recall and/or retrofit the car with proper safety features.

80.  As a result of Defendant Autoliv's negligence, plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

81.  Defendant, Autoliv, is jointly and severally liable for all damages in this case.

**COUNT VII – STRICT LIABILITY**
**PLAINTIFFS v. KM&I Co. Ltd.**

82.     Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

83.     Defendant KMI is in the business of designing, assembling, manufacturing, distributing, selling and/or supplying car seats, seatbacks and/or seat and seatback components, such as the seat and seatback system, and/or seat tracks that were within the 2009 Chevrolet Aveo involved in the subject collision.

84.     Defendant KMI marketed and/or placed the subject car seat and/or seatback system and/or seat track of the Chevrolet Aveo, which was owned and operated in the general stream of commerce.

85.     The subject car seat and/or seatback system and/or seat track in the Chevrolet Aveo was expected to and did reach end users, including driver Thalia Figueroa, without substantial change in the condition in which it was designed, assembled, manufactured, distributed, sold and/or supplied by Defendant KMI.

86.     The subject seat and/or seatback system and/or seat track was distributed, sold and/or supplied by Defendant KMI in a defective condition for the reasons set forth below.

87.     Defendant KMI, by and through its agents, servants, workmen, contractors and/or employees acting within the course and scope of their employment, breached its duties under § 402A of the Restatement (Second), Restatement (Third) of Torts and the statutes and case law of The Virgin Islands by:

        a.  failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject seat or seatback system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

        b.  failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

c.  failing to adequately inform and warn purchasers and ultimate users of the seat or seatback system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

d.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle seat or seatback system that was not crashworthy;

e.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

f.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

g.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

h.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

i.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

k.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous seat or seatback protection systems;

l.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that did not properly function;

m.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system with inadequate warnings and warning systems;

n.  failing to properly and reasonably design, manufacture, assemble, test and sell the car with the seats or seatback systems necessary to provide protection for occupants in the car; and

o.  designing, manufacturing, selling, supplying and distributing a seat or seatback system in a vehicle that, when used properly, would cause serious injury to the user.

p.  violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

q.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

r.  failing to recall and/or retrofit the car with proper safety features.

88.     The subject seat and/or seatback system and/or seat track was used and employed for the purpose for which it was designed and manufactured, and was used in a foreseeable manner.

89.     Defendant KMI is strictly liable to plaintiffs for the injuries, damages and death outlined above.

90.     By reason of Defendant KMI's failure to conform to its obligations and duties under § 402A of the Restatement (Second) and Restatement (Third) of Torts and Virgin Islands statutes and case law plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

91.     Defendant, KMI, is jointly and severally liable for all damages in this case.

## COUNT VIII – NEGLIGENCE
## PLAINTIFFS v. KM&I Co. Ltd.

92.     Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

93.    Defendant KMI was negligent in the following respects in the design, manufacture, testing and distribution regarding the subject vehicle:

     a.  failing to design, test, manufacture, assemble and correctly install the driver seat or seatback system so as to allow for the safe restraint of the driver and/or passengers during a collision;

     b.  failing to ensure the subject vehicle, including the subject seat or seatback system was reasonably crashworthy;

     c.  failing to adequately test the subject vehicle's seat or seatback system;

     d.  failing to provide reasonable and adequate warnings of the subject vehicle about its unreasonably dangerous and defective condition regarding its seat or seatback system;

     e.  failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject seat or seatback system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

     f.  failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

     g.  failing to adequately inform and warn purchasers and ultimate users of the seat or seatback system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

     h.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle seat or seatback system that was not crashworthy;

     i.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

     j.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

     k.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

m.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

n.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

o.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous seat or seatback protection systems;

p.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that did not properly function;

q.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that was unable to adequately sustain foreseeable loads during a crash;

r.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that failed to protect the driver and passengers of the vehicle during a crash;

s.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that mechanically failed under the stress of a crash and moved backwards, causing injury to the passenger in the rear seat;

t.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that failed to protect the occupants of the vehicle in the circumstances of the subject crash;

u.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system with inadequate warnings and warning systems;

v.  failing to properly and reasonably design, manufacture, assemble, test and sell the car with the seats or seatback systems necessary to provide protection for occupants in the car; and

w.  designing, manufacturing, selling, supplying and distributing a seat or seatback system in a vehicle that, when used properly, would cause serious injury to the user.

x.  violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

y.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

z.  failing to recall and/or retrofit the car with proper safety features.

94.   As a result of Defendant KMI's negligence, plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

95.   Defendant, KMI, is jointly and severally liable for all damages in this case.

## COUNT IX – STRICT LIABILITY
## PLAINTIFFS v. FAURECIA

96.   Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

97.   Defendant Faurecia is in the business of designing, assembling, manufacturing, distributing, selling and/or supplying car seats, seat tracks and/or seat and seatback components, such as the seat and seatback system and the seat track system that was within the 2009 Chevrolet Aveo involved in the subject collision.

98.   Defendant Faurecia marketed and/or placed the subject car seat and/or seatback system and/or seat track of the Chevrolet Aveo, which was owned and operated in the general stream of commerce.

99.     The subject car seat or seatback system in the Chevrolet Aveo was expected to and did reach end users, including driver Thalia Figueroa, without substantial change in the condition in which it was designed, assembled, manufactured, distributed, sold and/or supplied by Defendant Faurecia.

100.    The subject seat or seatback system was distributed, sold and/or supplied by Defendant Faurecia in a defective condition for the reasons set forth below.

101.    Defendant Faurecia, by and through its agents, servants, workmen, contractors and/or employees acting within the course and scope of their employment, breached its duties under § 402A of the Restatement (Second), Restatement (Third) of Torts and the statutes and case law of The Virgin Islands by:

    a.  failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject seat or seatback system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

    b.  failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

    c.  failing to adequately inform and warn purchasers and ultimate users of the seat or seatback system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

    d.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle seat or seatback system that was not crashworthy;

    e.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

    f.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

    g.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

h.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

i.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

k.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous seat or seatback protection systems;

l.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that did not properly function;

m.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system with inadequate warnings and warning systems;

n.  failing to properly and reasonably design, manufacture, assemble, test and sell the car with the seats or seatback systems necessary to provide protection for occupants in the car; and

o.  designing, manufacturing, selling, supplying and distributing a seat or seatback system in a vehicle that, when used properly, would cause serious injury to the user.

p.  violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

q.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

r.  failing to recall and/or retrofit the car with proper safety features.

102.  The subject seat or seatback system was used and employed for the purpose for which it was designed and manufactured, and was used in a foreseeable manner.

103.    Defendant Faurecia is strictly liable to plaintiffs for the injuries, damages and death outlined above.

104.    By reason of Defendant Faurecia's failure to conform to its obligations and duties under § 402A of the Restatement (Second) and Restatement (Third) of Torts and Virgin Islands statutes and case law plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

105.    Defendant, Faurecia, is jointly and severally liable for all damages in this case.

<div align="center">

**COUNT X – NEGLIGENCE**
**PLAINTIFFS v. FAURECIA**

</div>

106.    Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

107.    Defendant Faurecia was negligent in the following respects in the design, manufacture, testing and distribution regarding the subject vehicle:

    a.   failing to design, test, manufacture, assemble and correctly install the driver seat or seatback system so as to allow for the safe restraint of the driver and/or passengers during a collision;

    b.   failing to ensure the subject vehicle, including the subject seat or seatback system was reasonably crashworthy;

    c.   failing to adequately test the subject vehicle's seat or seatback system;

    d.   failing to provide reasonable and adequate warnings of the subject vehicle about its unreasonably dangerous and defective condition regarding its seat or seatback system;

    e.   failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject seat or seatback system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

    f.   failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

g.  failing to adequately inform and warn purchasers and ultimate users of the seat or seatback system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

h.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle seat or seatback system that was not crashworthy;

i.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

k.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

m.  designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

n.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

o.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous seat or seatback protection systems;

p.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that did not properly function;

q.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that was unable to adequately sustain foreseeable loads during a crash;

r.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that failed to protect the driver and passengers of the vehicle during a crash;

s.   designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that mechanically failed under the stress of a crash and moved backwards, causing injury to the passenger in the rear seat;

t.   designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that failed to protect the occupants of the vehicle in the circumstances of the subject crash;

u.   designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system with inadequate warnings and warning systems;

v.   failing to properly and reasonably design, manufacture, assemble, test and sell the car with the seats or seatback systems necessary to provide protection for occupants in the car; and

w.   designing, manufacturing, selling, supplying and distributing a seat or seatback system in a vehicle that, when used properly, would cause serious injury to the user.

x.   violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

y.   failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

z.   failing to recall and/or retrofit the car with proper safety features.

108.   As a result of Defendant Faurecia's negligence, plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

109.   Defendant, Faurecia, is jointly and severally liable for all damages in this case.

## COUNT XI – STRICT LIABILITY
## PLAINTIFFS v. FAURECIA NORTH AMERICA AND FAURECIA NAO

110.   Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

111.    Defendant Faurecia NA and Defendant Faurecia NAO is/are in the business of designing, assembling, manufacturing, distributing, selling and/or supplying car seats, seat tracks, seatbacks and/or seat and seatback components, such as the seat and seatback system that was within the 2009 Chevrolet Aveo involved in the subject collision.

112.    Defendant Faurecia NA and Defendant Faurecia NAO marketed and/or placed the subject car seat or seatback system of the Chevrolet Aveo, which was owned and operated in the general stream of commerce.

113.    The subject car seat or seatback system in the Chevrolet Aveo was expected to and did reach end users, including driver Thalia Figueroa, without substantial change in the condition in which it was designed, assembled, manufactured, distributed, sold and/or supplied by Defendant Faurecia NA and Defendant Faurecia NAO.

114.    The subject seat or seatback system was distributed, sold and/or supplied by Defendant Faurecia NA and Defendant Faurecia NAO in a defective condition for the reasons set forth below.

115.    Defendant Faurecia NA and Defendant Faurecia NAO, by and through its/their agents, servants, workmen, contractors and/or employees acting within the course and scope of their employment, breached its duties under § 402A of the Restatement (Second), Restatement (Third) of Torts and the statutes and case law of The Virgin Islands by:

> a.   failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject seat or seatback system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

> b.   failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

c. failing to adequately inform and warn purchasers and ultimate users of the seat or seatback system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

d. designing, assembling, manufacturing, selling, supplying and distributing a vehicle seat or seatback system that was not crashworthy;

e. designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

f. designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

g. designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

h. designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

i. designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

j. designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

k. designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous seat or seatback protection systems;

l. designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that did not properly function;

m. designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system with inadequate warnings and warning systems;

n. failing to properly and reasonably design, manufacture, assemble, test and sell the car with the seats or seatback systems necessary to provide protection for occupants in the car; and

o.  designing, manufacturing, selling, supplying and distributing a seat or seatback system in a vehicle that, when used properly, would cause serious injury to the user.

p.  violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

q.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

r.  failing to recall and/or retrofit the car with proper safety features.

116.    The subject seat or seatback system was used and employed for the purpose for which it was designed and manufactured, and was used in a foreseeable manner.

117.    Defendant Faurecia NA and Defendant Faurecia NAO is/are strictly liable to plaintiffs for the injuries, damages and death outlined above.

118.    By reason of Defendants' Faurecia NA and Faurecia NAO's failure to conform to its obligations and duties under § 402A of the Restatement (Second) and Restatement (Third) of Torts and Virgin Islands statutes and case law plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

119.    Defendant, Faurecia NA and Defendant Faurecia NAO are jointly and severally liable for all damages in this case.

## COUNT XII – NEGLIGENCE
## PLAINTIFFS v. FAURECIA NORTH AMERICA AND FAURECIA NAO

120.    Plaintiff incorporates the preceding paragraphs of this Complaint as if the same were set forth, at length, herein.

121.    Defendant Faurecia NA and Defendant Faurecia NAO were negligent in the following respects in the design, manufacture, testing and distribution regarding the subject vehicle:

a.  failing to design, test, manufacture, assemble and correctly install the driver seat or seatback system so as to allow for the safe restraint of the driver and/or passengers during a collision;

b.  failing to ensure the subject vehicle, including the subject seat or seatback system was reasonably crashworthy;

c.  failing to adequately test the subject vehicle's seat or seatback system;

d.  failing to provide reasonable and adequate warnings of the subject vehicle about its unreasonably dangerous and defective condition regarding its seat or seatback system;

e.  failing to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject seat or seatback system so as to minimize the risk of injury or death to the Chevrolet's operators and/or passengers;

f.  failing to direct and require manufacturers/assemblers to adhere to applicable safety regulations and standards;

g.  failing to adequately inform and warn purchasers and ultimate users of the seat or seatback system of the Chevrolet of the non-crashworthiness of the subject Chevrolet;

h.  designing, assembling, manufacturing, selling, supplying and distributing a vehicle seat or seatback system that was not crashworthy;

i.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

j.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

k.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable, or safe for its intended and represented purpose;

l.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked necessary safety features to protect users of said product;

m. designing, assembling, manufacturing, selling, supplying and distributing a product without simple and cost-effective safety devices;

n.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective and/or inadequate occupant protection systems;

o.  designing, assembling, manufacturing, selling, supplying and distributing a product with defective, inadequate and/or dangerous seat or seatback protection systems;

p.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that did not properly function;

q.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that was unable to adequately sustain foreseeable loads during a crash;

r.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that failed to protect the driver and passengers of the vehicle during a crash;

s.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that mechanically failed under the stress of a crash and moved backwards, causing injury to the passenger in the rear seat;

t.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system that failed to protect the occupants of the vehicle in the circumstances of the subject crash;

u.  designing, assembling, manufacturing, selling, supplying and distributing a seat or seatback system with inadequate warnings and warning systems;

v.  failing to properly and reasonably design, manufacture, assemble, test and sell the car with the seats or seatback systems necessary to provide protection for occupants in the car; and

w.  designing, manufacturing, selling, supplying and distributing a seat or seatback system in a vehicle that, when used properly, would cause serious injury to the user.

x.  violating principles of sound engineering with due regard for the fact that persons would be involved in collisions in their cars

y.   failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances; and

z.   failing to recall and/or retrofit the car with proper safety features.

122.   As a result of Defendant Faurecia NA's and Defendant Faurecia NAO's negligence, plaintiffs were caused to sustain devastating and catastrophic injuries, including the death of Shenika Gore as set forth in the paragraphs above.

123.   Defendant, Faurecia NA and and Defendant Faurecia NAO are jointly and severally liable for all damages in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Court enter a judgment against New GM and in favor of Plaintiffs, and grant the following relief:

A.   For all compensatory, including economic and noneconomic, damages caused by Defendant's conduct;

B.   For all other damages, including incidental and consequential damages, caused by Defendant's conduct;

C.   For the maximum interest provided by law on such monetary relief, including, but not limited to, prejudgment interest;

D.   Attorney's fees;

E.   Costs of suit; and

F.   For such other relief as the Court deems proper and just.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues triable of right by jury.

Respectfully submitted,

Dated: December 29, 2016

*/s/ Ryan W. Greene*
Ryan W. Greene, Esq.
VI Bar No. 839
15-B Norre Gade
P.O. Box 1197
Charlotte Amalie, St. Thomas
U.S. Virgin Islands 00804
Telephone:   (340) 715-5297
Fax:  (888) 519-7138
ryan@ryan-greene.com